IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | CASE NO. 1:17CV02624 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| CHARMAINE BRACY, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of James Johnson ("Johnson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Johnson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Johnson*, Cuyahoga County Case No. 585440-14-CR.  For the following reasons, the undersigned recommends that the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Johnson's conviction as follows:

> {¶ 4} K.S. was born on February 18, 2004, and was nine years old in
> January 2014. Johnson was best friends with K.S.'s father, A.A., and in a
> dating relationship with L.G., a cousin of K.S.'s mother, A.S. Due to these
> relationships, K.S. was familiar with Johnson and knew him as "Uncle
> Slug."

> {¶ 5} On January 17, 2013, A.S. and A.A. were engaged in wedding
> preparations at an Embassy Suites hotel and were unable to pick up K.S.
> after school. A.S. called Johnson and asked him to pick up K.S. from
> school. A.S. testified that it was typical for her and Johnson to watch each
> other's children. Johnson picked up K .S. and took him back to A.S. and
> A.A.'s home in Euclid. When A.S. and A.A. returned home from wedding
> planning activities, they found Johnson alone in their home with K.S.

> {¶ 6} On February 26, 2013, A.S. received a call from L.G. regarding
> allegations made against Johnson by L.G.'s daughter, Z.F. As a result of this
> conversation, A.S. questioned K.S. regarding Johnson's conduct with him
> and K.S. reported that he had been forced to perform oral sex on Johnson.

> {¶ 7} K.S. maintained that two instances of oral sex had occurred with
> Johnson. One instance occurred in the front seat of Johnson's sports utility
> vehicle but K.S. struggled to recall when this incident occurred and what his
> age was at the time. Johnson was acquitted of the charges relating to this
> incident.

> {¶ 8} The second incident occurred on January 17, 2013, after Johnson
> picked K.S. up from school. K.S. testified that Johnson took him to his
> home, closed the blinds, locked the door, turned off the lights and told K.S.
> to join him on a couch. Johnson then removed his penis and made K.S.
> perform oral sex. The incident lasted for approximately ten minutes before
> "Uncle Drew" appeared at the home and knocked on the door. Johnson
> ordered K.S. to stop and go do his homework before Johnson answered the
> door.

> {¶ 9} After K.S.'s parents learned of the accusations, K.S. was interviewed
> by Lauren McAliley, a nurse practitioner with Child Advocacy and
> Protection at Rainbow Babies and Children's Hospital. McAliley testified
> that there was no forensic evidence to be collected in K.S.'s case due to the
> delayed disclosure. McAliley prepared a report after meeting with K.S.
> wherein she detailed his account of the January 17, 2013 incident. K.S.

reported to McAliley that "this happened only one time" and he was told not to tell anyone or he would be beat up.

{¶ 10} Johnson testified and denied ever being alone with K .S. in the home. Johnson maintained that he took K.S. to Taco Bell and remained there until they met K.S.'s parents at the house. Johnson's relationship with L.G. ended in November 2012. On March 3, 2013, L.G. appeared at Johnson's place of employment and a confrontation ensued that resulted in L.G.'s arrest and Johnson being terminated. Johnson testified that L.G. confronted him about infidelity. L.G. testified that she confronted him regarding the allegations of sexual abuse towards her daughter, Z.F.

*State v. Johnson*, 2016-Ohio-2622, ¶¶4-10 (Ohio. App. 8th Dist. Apr. 21, 2016).

## II. Procedural History

### A.  Trial Court Proceedings

On June 18, 2014, the Cuyahoga County Grand Jury indicted Johnson with (1) four counts of rape in violation of Ohio Rev. Code ("O.R.C.") §2907.02(A)(1)(b) (Counts One, Three, Five, Seven) and (2) four counts of kidnapping in violation of O.R.C. §2905.01(A)(4) (Counts Two, Four, Six, Eight).  (Doc. No. 7-1, Exh. 1.)  Each of these charges carried sexually violent predator specifications and the kidnapping charges contained sexual motivation specifications.  (*Id.*)  Johnson pled not guilty to all charges.  (Doc. No. 7-1, Exh. 32.)

On August 8, 2014, Johnson filed a Voluntary Waiver of Jury Trail as to the Sexually Violent Predator Specifications.  (Doc. No. 7-1, Exh. 2.)

The case proceeded to jury trial on August 18, 2014.  (Doc. No. 7-1, Exh. 32.)  Pursuant to Ohio Crim. R. 29, Johnson moved for an acquittal at the close of the State's case, which the trial court denied.  (Doc. No. 7-4 at Tr. 168.)  Johnson renewed his Ohio Crim. R. 29 Motion after the defense rested and the state trial court again denied the motion.  (Doc. No. 7-5 at Tr. 112-116.)  On August 22, 2014, the jury returned its verdict, finding Johnson guilty of Counts

3

Seven and Eight (rape and kidnapping), but not guilty on the remaining six counts.  (Doc. No. 7-1, Exh. 3.)

On September 24, 2014, the state trial court issued a *nunc pro tunc* entry to reflect the victim's age for the convicted counts.  (Doc. No. 7-1, Exh. 4.)  That same date, the state trial court found Johnson not guilty of the sexually violent predator specifications.  (Doc. No. 7-1, Exh. 5.)

On September 24, 2014, the state trial court held a sentencing hearing.  The trial court merged Counts 7 and 8 and sentenced Johnson to 25 years to life.  (Doc. No. 7-1, Exh. 6.)  On September 25, 2014, the state trial court issued another *nunc pro tunc* entry to reflect the victim's age for the convicted counts.  (Doc. No. 7-1, Exh. 7.)

**B.      Direct Appeal**

On October 13, 2014, Johnson, through counsel, filed a timely notice of appeal to the state appellate court.  (Doc. No. 7-1, Exh. 8.)  In his appellate brief, he raised the following assignments of error:

> I.      The Defendant's convictions were against the manifest weight of the evidence.
>
> II.      The trail court errored[sic] by not assigning two attorneys to represent the Defendant-Appellant.
>
> III.      The prosecutor's remarks in closing arguments regarding the Appellant's postarrest silence, violated his right to due process and a fair trial.
>
> IV.      The Appellant was denied the effective assistance of counsel.

(Doc. No. 7-1, Exh. 9.)  The State filed a brief in response.  (Doc. No. 7-1, Exh. 10.)

On April 21, 2016, the state appellate court affirmed Johnson's convictions.  (Doc. No. 7-

4

1, Exh. 11.)

On October 27, 2016, Johnson, proceeding *pro se*, filed a Motion for Leave to File a Delayed Appeal and Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 12, 13.)  On December 14, 2016, the Supreme Court of Ohio denied Johnson's Motion for Leave to File a Delayed Appeal and dismissed the case.  (Doc. No. 7-1, Exh. 14.)

**C.  Motion to Credit Prison Community Work Service**

On March 31, 2016, Johnson filed a *pro se* "Motion to Credit Prison Community Work Service Toward Court Costs and Fines."  (Doc. No. 7-1, Exh. 15.)  The State filed a brief in opposition.  (Doc. No. 7-1, Exh. 16.)  On May 10, 2016, the state trial court denied Johnson's Motion, noting Johnson had to "demonstrate that the community service was approved by the warden."  (Doc. No. 7-1, Exh. 17.)  The state trial court later granted this Motion on December 15, 2016.  (Doc. No. 7-1, Exh. 18.)

**D.  Motion to Correct Void Sentence**

On February 9, 2017, Johnson filed a *pro se* "Motion to Correct Void Sentence," in which he asserted his "sentence of 25 years to life is contrary to law and thus void."  (Doc. No. 7-1, Exh. 19.)  The State filed a brief in opposition.  (Doc. No. 7-1 Exh. 20.)  The state trial court denied this Motion on March 8, 2017.  (Doc. No. 7-1, Exh. 21.)  Johnson filed a Notice of Appeal of this decision on April 12, 2017.  (Doc. No. 7-1, Exh. 22.)  The state appellate court dismissed the appeal as untimely on April 25, 2017.  (Doc. No. 7-1, Exh. 23.)

On July 12, 2017, Johnson filed a Motion for Leave to File Delayed Appeal and Notice of Appeal with the state appellate court.  (Doc. No. 7-1, Exh. 24, 25.)  The State filed a brief in opposition to the Motion for Delayed Appeal.  (Doc. No. 7-1, Exh. 26.)  On August 2, 2017, the

5

state appellate court denied Johnson's Motion for Leave to File Delayed Appeal.  (Doc. No. 7-1, Exh. 27.)  Johnson's appeal was thereafter dismissed.  (Doc. No. 7-1, Exh. 28.)

On September 15, 2017, Johnson filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 29.)  In his Memorandum in Support of Jurisdiction, Johnson raised the following propositions of law:

> I.   Appellant was denied due process in violation of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, when the Cuyahoga County Clerk of Courts failed to provide him proper notice of the judgment of the trial court denying his *pro se* Motion to Vacate Void Sentence.
>
> II.  Appellant was denied due process in violation of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, when the Eighth District Court of Appeals denied his Motion for Leave to File Delayed Appeal.
>
> III. Under the circumstances of the present case, Appellant's Motion to Vacate Void Sentence should be treated as a criminal proceeding for purposes of filing a delayed appeal pursuant to App.R. 5(A)(1)(a), and should not be denied as a civil proceeding.

(Doc. No. 7-1, Exh. 30.)

The Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4) on December 20, 2017.  (Doc. No. 7-1, Exh. 31.)

**E**.    **Application to Reopen Appeal under Ohio App. R. 26(B)**

On December 18, 2018, Johnson, filed a *pro se* application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (*State v. Johnson*, Ohio Eighth District Court of Appeals Case No. CA-14-102047, Docket Entry dated December 18, 2018.)  The State filed a response in opposition.  (*Id.* at Docket Entry dated January 15, 2019.)  On February 12, 2019, the state appellate court denied the application as untimely.  *State v.*

6

*Johnson*, 2019 WL 643560, *1 (Ohio. App. 8th Dist. Feb. 12, 2019).

**F.     Federal Habeas Petition**

On December 11, 2017,[1] Johnson filed a Petition for Writ of Habeas Corpus in this Court

and asserted the following grounds for relief:

> **GROUND ONE**: Petitioner's convictions for rape and kidnapping were against
> the manifest weight of evidence, in violation of his due process protections under
> the Fourteenth Amendment to the U.S. Constitution.
>
>> **Supporting Facts**: Testimony provided by the victim and a
>> second alleged victim were contradicting and unreliable, and
>> there was no physical evidence.  Petitioner was charged with
>> four counts of rape and kidnapping against the two alleged
>> victims, based on four supposed sexual assaults.  The same
>> testimonial evidence supported all four sets of charges.  The jury
>> found Petitioner not guilty of three of the alleged assaults but
>> guilty of the fourth.
>
> **GROUND TWO**: Petitioner was denied a fair trial when the prosecutor engaged
> in prosecutorial misconduct during closing argument by referencing his post-
> arrest silence, which violated Petitioner's due process protections under the
> Fourteenth Amendment to the U.S. Constitution.
>
>> **Supporting Facts**: During trial Petitioner Johnson indicated
>> that, after being advised of his *Miranda* rights, he did not
>> immediately invoke his right to remain silent and continued to
>> talk to a detective until the detective began intimidating him in
>> an attempt to obtain a confession.  At that point, Petitioner
>> demanded an attorney and the interview ended.
>
> **GROUND THREE**: Petitioner was denied effective assistance of trial counsel in
> violation of his Sixth Amendment right to counsel and his Fourteenth Amendment
> to due process of law.

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until December 18, 2017, Johnson states he placed it in the prison mailing system on December 11, 2017.  (Doc. No. 1 at 8.)  Thus, the Court will consider the Petition as filed on December 11, 2017.

> **Supporting Facts**: Petitioner's trial counsel failed to object to
> hearsay statements contained within a recounted phone
> conversation between alleged victims A.A., K.S. and Petitioner.
> The hearsay statements were limited to A.A.'s recounting of
> K.S. accusing Petitioner of touching him while Petitioner denied
> the claim.

(Doc. No. 1.)

On February 27, 2018, Warden Bracy ("Respondent") filed her Return of Writ. (Doc. No.

7.)  On March 29, 2018, Petitioner filed a Motion to Amend his Petition, seeking to add a claim

related to the "Motion to Correct a Void Sentence" he filed in the state trial court.  (Doc. No. 8.)

Respondent filed a brief in opposition.  (Doc. No. 9.)

On June 1, 2018, the Court granted Petitioner's Motion to Amend.  (Doc. No. 10.)

Petitioner filed a Traverse on June 29, 2018, adding the following ground for relief:

> Johnson contends that his rights to Due Process and Equal Protection under
> the Fourteenth Amendment to the U.S. Constitution were violated when the
> trial court imposed a void sentence of 25 years to life on his charge of rape
> under O.R.C. 2907.02(A)(1)(b).

(Doc. No. 11 at 11.)  Respondent filed a supplemental answer addressing this claim on July 18,

2018.  (Doc. No. 12.)  Petitioner filed a reply to the supplemental answer on August 6, 2018.

(Doc. No. 13.)

### III.  Exhaustion and Procedural Default

**A.       Grounds One, Two, & Three**

Respondent argues Grounds One, Two, and Three of the Petition are procedurally

defaulted.  (Doc. No. 7 at 29.)  Respondent asserts that while these claims were all raised on

direct appeal to the state appellate court, Johnson defaulted the claims by failing to timely appeal

with the Supreme Court of Ohio.  (*Id.*)  Respondent contends while "Johnson faults the

8

unavailability of a notary at the prison for his untimely appeal" he does not explain "the additional four month delay which occurred after he was notified by the [Supreme Court of Ohio] of his deficient filing." (*Id.* at 30.) Respondent maintains Johnson is unable to establish cause, prejudice, or miscarriage of justice to avoid procedural default. (*Id.*)

Johnson concedes "his attempt to raise the claims to Ohio's highest court was precluded when his motion for delayed appeal to the Ohio Supreme Court was denied." (Doc. No. 11 at 3.) He argues this procedural default should be excused because he "was prevented from filing a timely notice of appeal due to the unavailability of a notary on-site in the institution to notarize the affidavit of indigence." (*Id.*) Johnson asserts "[w]hy he waited several months before refiling the notice of appeal is immaterial, as the likelihood of the motion for delayed appeal being denied was no greater whether he had waited several days or several months." (*Id.*)

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state

9

procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the

11

defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

With these principles in mind, the Court finds Grounds One, Two, and Three of Johnson's federal habeas petition are procedurally defaulted.  Johnson presented these grounds for relief to the state appellate court on direct appeal.  (Doc. No. 7-1, Exh. 9.)  On April 21,

2016, the state appellate court affirmed Johnson's conviction and sentence.  (Doc. No. 7-1, Exh. 11.)  Thereafter, Johnson had forty-five days, or until June 6, 2016, to appeal to the Supreme Court of Ohio, but failed to do so.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).  Instead, Johnson filed a Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio on October 27, 2016.  (Doc. No. 7-1, Exh. 13.)  The Supreme Court of Ohio denied this Motion and dismissed the matter on December 14, 2016.  (Doc. No. 7-1, Exh. 14.)

The Court finds Johnson's failure to timely appeal to the Supreme Court of Ohio, in conjunction with that court's denial of his Motion for Delayed Appeal, resulted in procedural default.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)(holding an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar).  Therefore, absent a showing of cause and prejudice, Grounds One through Three should be dismissed.

### a.      Cause and Prejudice

Johnson may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren,* 440 F.3d at 763.

Johnson argues his procedural default should be excused because of "circumstances beyond his control," namely "the unavailability of a notary on-site in the institution to notarize the affidavit[3] of indigence."  (Doc. No. 11 at 3.)  Johnson provided a similar argument in his

---

[3]      Ohio S.Ct. Prac. R. 3.06(A) provides that a notarized affidavit of indigence must be filed in lieu of a filing fee.  The rule further provides the "Clerk of the Supreme Court shall refuse to file an affidavit of indigence that does not comply with this rule."  (*Id.*)

13

Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio, asserting "the only person here at TCI who is a notary had been gone the previous three weeks."  (Doc. No. 7-1, Exh. 13.)  Johnson does not provide any evidence, beyond his own sworn statement, to substantiate this claim.  Indeed, the record does not contain any evidence of the efforts he made to obtain notary services in prison.  Johnson also does not provide the letter[4] which the Supreme Court of Ohio Clerk of Court issued to him, which allegedly explained his appeal could not be filed because his Affidavit of Indigence was not notarized.  (*See* Doc. No. 7-1, Exh. 13.)

The Court finds Johnson has not demonstrated cause for his failure to follow the procedural rules of the Supreme Court of Ohio.  Johnson does not contend no notary was available during the entire 45-day period in which he could have filed his appeal or that he "attempted but failed to locate another individual to notarize his application."  *Harrison v. Ohio*

---

[4]    Johnson contends he originally attempted to file his appeal prior to the 45-day deadline.  (Doc. No. 7-1, Exh. 13.)  Johnson maintains that, in a letter dated June 6, 2016, the Deputy Clerk of the Ohio Supreme Court informed him his mailed documents to the court were being returned to him as unfiled because he was not in compliance with the procedural rules requiring a notarized affidavit of indigence. (*Id.*)  While Johnson has not provided this Court with a copy of this letter to review, such letters used by the Deputy Clerk to return Johnson's papers are a "well-established and regularly-followed practice at the time of Petitioner's procedural default for the clerk not to file, but rather to return, documents submitted for filing by criminal defendants that failed to satisfy the requirements for pleadings explicitly set forth in the court's procedural rules."  *Smith v. Jackson*, 2007 WL 2084840 at *8 (S.D.Ohio July 19, 2007).  Thus, the Deputy Clerk's enforcement of the rule also constitutes an "adequate and independent" ground upon which to foreclose federal habeas review.  *Henson v. Hudson*, 2009 WL 2588927, *7 (N.D. Ohio Apr. 2, 2009)("Accordingly, the state procedural ground relied upon by the deputy clerk in not opening a case, not filing Petitioner's timely but insufficient documents, and returning these documents to Petitioner as improperly filed, is an adequate and independent ground."), *report and recommendation adopted*, 2009 WL 2567727 (Aug. 17, 2009).  In sum, Johnson's failure to obtain a notary in a timely manner cannot serve to excuse his procedural default.

*Dept. of Rehab and Corr.*, 2015 WL 542338, *13 (N.D. Ohio Feb. 10, 2015).  Moreover, Johnson does not explain whether he had advance notice of the notary being unavailable for three weeks, or if it was an unplanned absence.  Given that Johnson had 45 days in which to file a timely appeal and locate a notary, the undersigned finds Johnson's unsupported allegation insufficient to demonstrate cause for his procedural default.  *King v. Warden*, 2010 WL 518172, *10 (S.D. Ohio Feb. 4, 2010)(finding that petitioner failed to show cause for procedural default when he claimed he was denied access to a notary because the petitioner did not provide any evidence to support his allegations.).  *See also Churchill v. Warden*, 2017 WL 4418553, *1-3 (S.D. Ohio Oct. 5, 2017)(finding procedural default despite petitioner's claims he was unable to obtain notary services within his institution), *report and recommendation adopted*, 2017 WL 5972114 (S.D. Ohio Dec. 1, 2017); *Pough v. Ohio*, 2006 WL 3241791, *5 (N.D. Ohio Nov. 7, 2006)(finding procedural default despite petitioner's claims he was unable to have his affidavit of indigency notarized because of an "unexpected" two week absence of the prison notary just prior to the deadline for filing a timely appeal).

Moreover, even if this Court accepts Johnson's unsubstantiated argument there was no notary available to him, Johnson does not explain why it then took him another four months to file his Motion for Delayed Appeal with the Supreme Court of Ohio.  Johnson asserts "[w]hy he waited several months before refiling the notice of appeal is immaterial, as the likelihood of the motion for delayed appeal being denied was no greater whether he had waited several days or several months."  (Doc. No. 11 at 3.)  The Court does not find this argument persuasive.  Indeed, Johnson maintains the Supreme Court of Ohio returned his attempted appeal because of his failure to have a notarized affidavit of indigency on June 6, 2016.  (Doc. No. 7-1, Exh. 11.)

15

Rather than immediately correcting this deficiency, Johnson waited over four months to move for a delayed appeal.  It is entirely possible the Supreme Court of Ohio would have granted his Motion for Delayed Appeal had Johnson immediately rectified this error.  Given that Johnson was put on notice of this deficiency in June 2016, the Court can find no reason or explanation for Johnson's decision to wait until October 27, 2016 to file a delayed appeal with the Supreme Court of Ohio.

As Johnson is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice.  *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir.2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice."); *Group v. Robinson*, 158 F.Supp.3d 632, 651 (N.D. Ohio Jan. 20, 2016).

Accordingly, and for all the reasons set forth above, the Court finds Johnson has failed to establish cause and prejudice to excuse the procedural default of Grounds One, Two, and Three.

### b.    Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  To be credible, such a claim requires the petitioner to support his allegations of constitutional error

16

with new and reliable evidence that was not presented at trial.  *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Johnson has not provide any argument in which to establish actual innocence.  He does not point to any new, reliable evidence of his innocence which was not presented at trial.  Rather, Johnson asserts "there was no physical evidence produced at trial to support the rape allegations, and the only testimony evidence supporting the charges came from the children themselves."  (Doc. No. 11 at 6.)  However, this is not new evidence which establishes his innocence, but instead a challenge to the evidence presented at trial.  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

In light of the above, it is recommended Grounds One, Two, and Three of Johnson's habeas petition be DISMISSED as procedurally defaulted.  Accordingly, the Court will not reach the merits of Grounds One, Two, and Three.

### IV.  Statute of Limitations – Ground Four

**A.** **One-Year Limitation Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State

17

action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsections (A) is relevant to this Petition and will be discussed below.[5]

## B.      One-Year Limitation – § 2244(d)(1)(A)

Respondent asserts Ground Four is time-barred because it was not added to Johnson's Petition within the one-year limitations period.  (Doc. No. 12 at 5.)  Respondent contends Palmer's conviction and sentence became final on June 6, 2016, which is forty-five (45) days after the state appellate court affirmed his conviction.  (*Id*. at 4.)  Respondent acknowledges Palmer filed several motions which tolled the one-year limitation period.  (*Id*. at 4-5.)  However,

---

[5]      Johnson does not argue the limitations period should commence at a later date for any of the reasons set forth in §§2244(d)(1)(B)-(D).  Johnson does suggest he was not aware of the sentencing error he asserts in Ground Four until after being incarcerated, but provides no specific dates or factual predicate argument.  (Doc. No. 11 at 15.)  Federal courts in this Circuit have found that the time commences under § 2244(d)(1)(D) when the factual predicate for a habeas petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given petitioner.  *Redmond v. Jackson*, 295 F. Supp 2d 767, 771 (E. D. Mich. 2003).  *See also Chinn v. Bergh*, 2014 WL 3894376 at * 4 (E.D. Mich Aug. 8, 2014).  Moreover, the time under the AEDPA's limitations period begins to run pursuant to § 2244(d)(1)(D) when a habeas petitioner knows, or through due diligence, could have discovered, the important facts for his or her claims, not when the petitioner recognizes the facts' legal significance.  *See Redmond*, 295 F.Supp.2d at 771; *Chinn*, 2014 WL 3894376 at *4.  Indeed, Johnson's fourth ground for relief is a challenge to the sentence imposed by the state trial court.  This claim, by its very nature, is based on facts which would have been known to Johnson at the time of his sentencing in September 2014.  As such, there is no basis for a delay in the running of the statute of limitations under § 2244(d)(1)(D).

Respondent argues the AEDPA statute of limitations expired on January 29, 2018, thus making Johnson's March 29, 2018 Motion to Amend untimely.  (*Id.* at 5.)

Johnson does not provide any arguments specific[6] to the AEDPA statute of limitations, instead arguing Ground Four is not procedurally defaulted and analyzing it under the *Maupin* factors.  (Doc. No. 13 at 3-5.)  However, Respondent has not asserted this ground for relief is procedurally defaulted.

Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  However, this one-year limitation is tolled during the time " 'a properly filed application for State postconviction or other collateral review ... is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); accord *Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir.2003).  "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse

---

[6]    Johnson also argues Respondent is attempting to improperly raise objections to the Court's Order which granted his Motion to Amend. (Doc. No. 13 at 1-2.) He asserts "Respondent cannot now claim that the Order to Amend the Petition was improperly granted, as they have waived the issue of contesting the amendment by failing to comply with the applicable deadline." (*Id.* at 2.) This is a misunderstanding of both the Court's Order and the Respondent's argument. In granting the Motion to Amend, the Court permitted Johnson to add an additional ground for relief to his Petition. The Court did not make any judgments or reach any conclusions regarding the AEDPA statute of limitations. (*See* Doc. No. 10 at 4-5.) Indeed, in the Order granting the Motion to Amend, this Court directed Respondent to "present a complete response to Johnson's new claim and address all arguments relative thereto, including the *statute of limitations*." (*Id*. at 6.)(emphasis added). Thus, Respondent's arguments regarding the statute of limitations comply with the Court's Order.

19

determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*  Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 3, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D.Ohio Jan.8, 2009).  Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe*, 2009 WL 73905 at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir.2007).

Here, Johnson was sentenced on September 24, 2014 and timely appealed on October 13, 2014.  (Doc. No. 7-1, Exh. 6, 8.)  The state appellate court affirmed his conviction and sentence in a decision that was journalized on April 21, 2016.  (Doc. No. 7-1, Exh. 11.)  Johnson then had forty-five (45) days, or until June 6, 2016, to appeal to the Supreme Court of Ohio, but failed to successfully do so.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).  Thus, the Court finds Johnson's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on June 6, 2016, forty five (45) days after the state appellate court issued its decision affirming his conviction and the time to file a timely notice of appeal with the Supreme Court of Ohio expired.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (when a petitioner does not appeal to the state's highest court on direct review, the case becomes final under § 2244(d)(1)(A) when the time period to do so

expires).  Accordingly, the Court finds the limitations period commenced on June 7, 2016 and, absent tolling, expired one year later, on June 7, 2017.

However, Johnson filed several post-judgment motions which served to toll the statutory limitations period.  A review of the record indicates the limitations period initially ran uninterrupted for 142 days, from June 7, 2016 to October 27, 2016.  On October 27, 2016, Johnson filed a Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio, which tolled the statute of limitations.  (Doc. No. 7-1, Exh. 13.)

The Supreme Court of Ohio denied Johnson's Motion on December 14, 2016.  (Doc. No. 7-1, Exh. 14.)  The statute then ran for 56 days, until Johnson filed his "Motion to Correct Void Sentence" with the state trail court on February 9, 2017.  (Doc. No. 7-1, Exh. 19.)  The statute remained tolled until March 8, 2017, when the state trial court denied his Motion.  (Doc. No. 7-1, Exh. 21.)

The statute resumed on March 9, 2017, and ran[7] until July 12, 2017, when Johnson filed a Motion for Leave to File Delayed Appeal with the state appellate court.  (Doc. No. 7-1, Exh. 25.)  At this point, 323 days of the statutory limitations period had elapsed.  The state appellate court denied his Motion for Leave, and Johnson appealed to the Supreme Court of Ohio.  (Doc.

---

[7]   The Court acknowledges Johnson filed a Notice of Appeal with the state appellate court on April 12, 2017.  (Doc. No. 7-1, Exh. 22.)  The state appellate court dismissed this appeal as untimely on April 25, 2017.  (Doc. No. 7-1, Exh. 23.)  This Notice of Appeal does not have any tolling effect because only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations.  *See Allen*, 128 S.Ct. at 3 ("a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2).").  Assuming, *arguendo*, it was properly filed, this would have only added 14 additional days of tolling.  Regardless of which calculation is used, Johnson's Motion to Amend his habeas petition was filed after the expiration of the statute of limitations.

21

No. 7-1, Exh. 27, 29.)  The statute of limitations remained tolled[8] until December 20, 2017, when the Supreme Court of Ohio declined to accept jurisdiction of Johnson's appeal.  (Doc. No. 7-1, Exh. 31.)

The limitations period resumed on December 21, 2017, and ran for 42 days until it expired on February 1, 2018.  While Johnson's initial December 11, 2017 federal habeas petition was timely filed, he did not file a motion to amend this petition until March 29, 2018.  (Doc. No. 1, 8.)  Thus, Johnson's request to add a fourth ground for relief was filed outside the one-year statutory period.

**C.     Relation Back to the Original Petition**

However, because Johnson timely filed his federal habeas petition on December 11, 2017, this Court must consider whether the claim asserted in Ground Four "relates back" to the claims timely asserted in Grounds One, Two, and Three.  Indeed, when a petitioner asserts a new, otherwise-untimely claim "tied to a common core of operative facts" as a timely filed claim, the new claim will be considered timely filed if it "relates back" to the previously filed claim.  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  A new claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id*. at 650.

Here, Johnson originally raised three grounds for relief in his petition: (1) his conviction

---

[8]     Johnson filed his federal habeas petition on December 11, 2017.  (Doc. No. 1.) However, the filing of a federal habeas petition has no tolling effect upon the calculation of the AEDPA statute of limitations.  *Duncan v. Walker*, 533 U.S. 167, 181 (2001)(holding an application for federal habeas corpus review does not toll the AEDPA limitation period).  *See also Guy v. Kelly*, 2015 WL 1036487, *11 (N.D. Ohio Mar. 9, 2015).

22

was against the manifest weight of the evidence (Ground One); (2) the prosecutor violated his

Fourteenth Amendment rights by referring to his post-arrest silence (Ground Two); and (3)

ineffective assistance of trial counsel for failure to object to hearsay statements made during the

trial (Ground Three).  (Doc. No. 1 at 4-6.)  Following the Court granting his Motion to Amend,

Johnson added a fourth ground for relief, asserting the sentence imposed by the state trial court

was void because it was contrary to Ohio Revised Code (Ground Four).  (Doc. No. 11 at 14.)

The Court finds Ground Four does not "relate back" to the claims presented in the

original petition because it presents new arguments  "supported by facts that differ in both time

and type from those the original pleading."  *Mayle*, 545 U.S. at 650.  Indeed, Ground Four

concerns the sentence imposed by the state trial court.  Plainly, this claim does not relate to the

three claims raised in the original Petition, which all pertain to evidence and testimony presented

at Johnson's trial.  Because Ground Four does not "share a factual basis" with any argument

raised in the original Petition, it does not relate back and is therefore, time barred.  *Wiedbrauk v.

Lavigne*, 174 F. App'x 993, 1002 (6th Cir. May 17, 2006) ("[i]t is not sufficient that the newly

asserted claims 'relate to the same trial, conviction, or sentence as a timely filed claim[,]' ")

(quoting *Mayle*, 545 U.S. at 662).

In sum, as the statutory limitations period expired on February 1, 2018 and Johnson did

not seek to add Ground Four until March 29, 2018, it is beyond the AEDPA statute of

limitations.  Therefore, unless equitable tolling is appropriate, Ground Four should be dismissed

as time-barred.

**C.**      **Equitable Tolling**

The Supreme Court has held the AEDPA statute of limitations is subject to equitable

tolling in appropriate circumstances. *Holland v. Florida,* 560 U.S. 631, 645 (2010). In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland,* 130 S.Ct. at 2565. *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). A court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights." *Vroman*, 346 F.3d at 605, quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); accord *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir.2003).

   The Court finds Johnson has failed to demonstrate he is entitled to equitable tolling. As an initial matter, Johnson has not raised any argument as to why equitable tolling would be appropriate. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)(holding a petitioner bears the burden of proving equitable tolling is applicable). Regardless, the record does not establish Johnson has been reasonably diligent in pursuing his rights. As discussed *supra,* Johnson did not timely file his direct appeal with the Supreme Court of Ohio. He also waited until February 2017, over two years after sentencing, to file his "Motion to Correct Void Sentence" with the state trial court. Most significantly, the Supreme Court of Ohio declined to accept jurisdiction of his appeal on December 20, 2017, resulting in the full exhaustion of his fourth ground for relief. However, Johnson did not file his Motion to Amend with this Court until three months later, on March 29, 2018. Johnson provides no explanation for the delay in adding this fourth ground for relief. Given that Johnson has been able to file multiple post-conviction motions with the state courts, there does not appear to be any "extraordinary circumstance" which

24

prevented him filing a timely Motion to Amend with this Court.

The Court also rejects any suggestion Johnson's *pro se* status constitutes "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015).  Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing").

Johnson suggests the statute of limitations does not pose a bar to review because Ground Four pertains to the validity of his sentence and "a void sentence is a legal nullity and may be attacked at any time."  (Doc. No. 13 at 2.)  However, "habeas petitioners cannot evade the AEDPA's statute of limitations 'by the simple expedient of arguing that [the challenged] conviction is void.'"  *Naegele v. Warden*, 2014 WL 2006797, *7 (S.D. Ohio May 16, 2014)(quoting *Tackett v. Warden*, 2012 WL 2094365, *6 (S.D. Ohio June 11, 2012), *report and*

*recommendation adopted*, 2014 WL 3547371 (S.D. Ohio July 17, 2014).  *See also Frazier v. Moore*, 252 Fed. App'x 1, 5 (6th Cir. Oct. 17, 2007)("As Frazier is in custody pursuant to a judgment of the Ohio courts, even if that judgment may not be valid under state law, he is subject to 28 U.S.C. §2244(d)'s one year statute of limitations in filing his federal habeas petition." ); *King v. Bunting*, 2014 WL 2864422, *2 (N.D. Ohio June 24, 2014).

In sum, because Johnson failed to exercise his rights diligently and no extraordinary circumstance prevented him from adding Ground Four to his petition, the Court finds equitable tolling is not warranted in this case.

**D.      Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id*. at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In

26

making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id*. (quoting *Schlup*, 513 U.S. at 332).

No actual innocence exception argument was raised in this case.  Johnson does not identify any new, reliable evidence of his actual innocence; i.e., exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available to him at the time of his underlying criminal proceedings.  *See Schlup*, 513 U.S. at 324.  Rather, Johnson argues "there was no physical evidence produced at trial to support the rape allegations, and the only testimony evidence supporting the charges came from the children themselves."  (Doc. No. 11 at 6.)  While this argument may challenge the strength of the evidence at trial, it does not provide evidence of his actual innocence.

For the reasons set forth above, the Court finds Johnson has not demonstrated he is entitled to the actual innocence exception.  Thus, the Court finds Ground Four to be time-barred under §2244(d)(1).  Accordingly, the Court will not reach the merits[9] of Ground Four.

---

[9]    In addition to being untimely, Ground Four is non-cognizable.  Ground Four asserts Johnson's sentence is void because it is contrary to the sentencing guidelines contained in the Ohio Revised Code.  (Doc. No. 11 at 14.)  The entirety of this claim is predicated upon Ohio sentencing law and therefore noncognizable.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003).  In his Traverse, Johnson attempts to frame this ground for relief as a due process and equal protection argument.  (Doc. No. 11 at 17.)  However, Johnson did not present it as a due process argument to the state courts.  (Doc. No. 7-1, Exh. 19, 30.)  Therefore, to the extent Johnson is making a due process and equal protection argument, the Court finds it to be not properly before this Court.  *See Connin v. Miller*, 2014 WL 29125, *4 (N.D. Ohio Jan. 3, 2014)("the claim must be presented to the state courts under the same legal theory which it is later presented in federal court.").

27

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.


Date:  April 4, 2019                                       *s/ Jonathan Greenberg*
                                                            Jonathan D. Greenberg
                                                            United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

28